UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

ERIN MOSIER,                                                        Docket No.:

                *Plaintiff,*

     -against-                                           **<u>COMPLAINT</u>**

                                           **PLAINTIFF DEMANDS**
THE STATE UNIVERSITY OF NEW YORK,                                   **<u>A JURY TRIAL</u>**
STONY BROOK UNIVERSITY and
LAWRENCE FROHMAN, PH.D., *individually*,

                *Defendants.*
-------------------------------------------------------------------X

       Plaintiff, as and for her Complaint, respectfully alleges, all upon information and belief, as follows:

**<u>JURISDICTION AND VENUE</u>**

       1.     This Court has original jurisdiction over the subject matter of this litigation pursuant to 28 U.S.C. §1331, in that certain of the Plaintiff's claims arise under the laws of the United States, namely Title IX of the Education Amendments of 1972, 20 U.S.C. §1681 *et seq.* ("Title IX") and supplemental jurisdiction over the Plaintiff's claims under New York State Executive Law §296(4) and New York State Civil Rights Law §40-c(2) pursuant to 28 U.S.C. §1367.

       2.     Venue is proper under 42 U.S.C §2000e-5(f)(3) and 28 U.S.C §1391(b) because Defendants the State University of New York and Stony Brook University reside and do business within the Southern District of New York.

## IDENTITY OF PARTIES

3.     At all relevant times mentioned herein, Plaintiff Erin Mosier ("Mosier") was and is a resident of the State of New York and was a student of the State University of New York ("SUNY") and/or Stony Brook University.

4.     SUNY is the largest comprehensive university system in the United States with 64 institutions serving nearly 1.3 million students.

5.     Stony Brook University is widely regarded as a SUNY flagship located on Long Island, New York and maintains locations in New York County.

6.     Both Stony Brook University and the State University of New York ("SUNY") are collectively referred to herein as "Stony Brook."

7.     During her matriculation at Stony Brook, Mosier participated in the Social Studies Education Program, for which Professor Lawrence Frohman, Ph.D. ("Frohman") was a Director, and Mosier attended classed taught by Frohman from September 2015 through her graduation in May 2018.

8.     Frohman is an Associate Professor of History at Stony Brook and has been affiliated with the institution since 2000.

## BACKGROUND RELEVANT TO ALL CAUSES OF ACTION

9.      After receiving an Associate's Degree in Adolescent Education from Nassau Community College in Spring 2015 with a 3.3 GPA.

10.     Mosier's desire was to become a teacher and had already built an impressive resume, including working with children at a dance studio and volunteering at Mother Theresa's house for orphaned children in Mumbai, India and was chosen from hundreds of candidates for a World Vision mission trip to Ethiopia.

11.     To that end, Mosier enrolled at Stony Brook for the Fall 2015 semester and sought to join Stony Brook's prestigious Social Studies Education Program ("the Program"), for which Professor Lawrence Frohman, Ph.D., was the sole undergraduate advisor.

12.     In her first semester at Stony Brook, Mosier attended a class taught by Frohman and joined the Program in the following semester, Spring 2016.

13.     Within weeks of attending the class taught by Frohman, Frohman began a campaign of demeaning and degrading sex discrimination against Mosier, including both private statements made during office hours and public humiliation during class, that included, only by way of example, at least the following:

       !       **"You are nothing but a pretty face;"**

       !       **"All you are is a dumb blonde;"**

! **"You will only get positions in life if you use your body"** and **"you should be thankful for your looks;"**

! Telling Mosier during office hours that she "talks too much" and that her mouth should be used "for something else" and that **"all women should use their mouth for men's pleasure;"**

! Degrading Mosier when she got an answer wrong by saying, **"It's not your fault you are a woman and can't help yourself but be wrong;"**

! **"You will only make it in life if you marry rich;"**

! One day when Mosier asked Frohman to explain an issue after class, he responded by saying, **"Can you get through all of your blonde?"**

! **"Women have no right being in the workplace;"**

! **"This is not a place for women;"**

! "Women are incompatible;"

! Making Mosier so uncomfortable with her appearance that she changed her hair color from blonde to brown;

! Saying to Mosier in front of the entire class when she walked in a few minutes late, "Look, the delinquent has joined us," which he would not have done to the male students;

! Making comments about Mosier's looks and gender when she attended Frohman's office hours to ask questions about the Program or creating her schedule;

! Silently approaching Mosier while she was reading or listening to her headphones in the hallway of the Social and Behavioral Sciences ("SBS") building, where the Program was located and where Frohman had his office, and standing over her until she noticed his presence, which was frightening to Mosier, and which Frohman did so frequently that Mosier stopped going to the SBS building;

4

!      Blatantly favoring male students over female students by, among other things, allowing the male students to work independently while Mosier and the one other female student in his class had to work together, as if the female students were not able to complete work on their own;

!      Giving better grades to male students based on gender, as demonstrated by the fact that Mosier and a male student did their work together and checked each other's work, yet the male student consistently received a higher grade than Mosier, and Frohman state that he "grades based on feelings;"

!      Making class so frightening and hostile that after class one evening when Frohman called Mosier to return to the classroom, Mosier became frozen with fear and only returned after a male friend offered to accompany her, and the issue was merely that Mosier had left her water bottle in the classroom;

!      Making so many sexual comments to Mosier during office hours that she became so uncomfortable that she made an excuse to leave, even though Mosier was required to attend Frohman's office hours since he was the Program's sole advisor, either to select classes or to go over Mosier's work;

!      Emailing Mosier at the end of the Fall 2016 semester and telling her to drop out of the Program, that he did not see a way for her to complete the Program and that she would not graduate as a teacher, which was devastating to Mosier;

!      When Mosier brought her mother to meet with Frohman following that email, demeaning Mosier by saying, "I see you brought your mommy with you" and dismissing Mosier as having a learning disability, saying to Mosier, "I don't understand learning disabilities and why can't you just deal with it;"

!      Saying to Mosier in front of her mother, **"You have to prove to me you are not just an air head dumb blonde with a pretty face;"**

!      Showing Mosier a list of grades at the end of the semester and all the male students had A's and B+'s, while the female

students had C's and D's;

!      Intentionally embarrassing Mosier in class by asking a male student his opinion about a topic and then asking Mosier her opinion, after which Frohman kept asking Mosier "Why?" and began to explain why the male student was right and she was wrong, and when Mosier explained that she simply had a different opinion from the male student, Frohman said in front of the class, "I'm not going to have another 3-hour go around meeting with you and your mother about your learning disability," which caused another student to say, "Why is Frohman hating extra on Erin today?"

!      Continuing to make comments in class about Mosier's looks and body, including calling her a **"dumb blonde"** in front of her peers;

!      Making sexual comments and comments that put down women, including talking about how he enjoys oral sex and using the term "blow job" while standing over Mosier and looking at her;

!      Asking the class to identify a picture on the chalkboard and when Mosier, with permission, went to the front of the room to get a closer look and realized what the image was, hitting Mosier across the arm and saying, **"Don't say what it is or I'm going to slap you across your ass for not being a good girl;"**

!      Responding to Mosier's email requesting a meeting with Frohman, "Say please..." which he would not have done to a male student;

!      When Mosier finally broke down and told Frohman that she was going to drop the Program because her work was never going to be good enough, saying, "Do I make you feel this way?" and when Mosier said yes, convincing Mosier to remain in the Program, yet demeaning her in the same meeting by throwing books and balls at her and saying, **"You have the attention span of a gnat"** and **"You are worse than my wife and dog combined."**

The above are merely examples of how Frohman created an environment that was permeated with discriminatory intimidation, ridicule and insult that was sufficiently severe and/or pervasive to alter the conditions of  impacted Mosier's educational environment.

14.     Frohman's humiliating and reprehensible sex discrimination continued throughout her time at Stony Brook, where Frohman remained her advisor and professor, as he persisted in making demeaning comments every time she was in his class.

15.     On or about April 12, 2017, Mosier was to give a presentation of a lesson plan to the class and, because she was understandably nervous, she placed lavender oil on her hands, and when Frohman asked why she was placing oils on her hand and Mosier responded that it was to calm her down, Frohman stated, **"What would calm me down is taking you through a ride on the beaver car wash with me,"** which was a clear and disgusting reference to Frohman performing a sexual act on Mosier and negatively impacted Mosier's 40 minute presentation.

16.     During that demonstration, Frohman required Mosier to sit on the desk in front of the class and then stood over her and put his face right in front of hers, and when Mosier looked away because she was uncomfortable, Frohman belittled her by saying, "Why can't you look me in the eye?" and was so confrontational that other students told Frohman to "back off" and "She's uncomfortable" and another student took a photo and posted it on social media saying, "Creepy ass professor."

7

17.     Shortly after Frohman's degrading and humiliating treatment of Mosier during her presentation on or about April 12, 2017, which was so severe that even her classmates told Frohman to "back off," Mosier sought the assistance of Professor Sara Lipton, Ph.D. ("Lipton"), and complained about Frohman's discrimination.

18.     Mosier then had a meeting with Lipton and Professor Paul Gootenberg, Ph.D. ("Gootenberg"), who was the Chair of the History Department, where Frohman was a Professor.

19.     At the start of the meeting, Gootenberg stated, **"I don't mean to sound cynical, but what did Larry [Frohman] do now?"** demonstrating that Stony Brook was well aware of Frohman's propensity for inappropriate conduct.

20.     After Mosier told Gootenberg about Frohman's sex discrimination of her, Gootenberg callously responded, **"What is your appearance and how are you acting to be treated like this?,"** which was so appalling that even Lipton immediately responded, "What does that have to do with anything?"

21.     Gootenberg then said to Mosier, **"You are like the fifth person this semester to come to me about Professor Frohman and I have heard and know things about him, but this is just way out of hand and I can't keep covering for him."**

22.     On or about, April 28, 2017, Mosier had a meeting with Stony Brook's Title IX office that lasted approximately two hours.

23.     Stony Brook's response to Mosier's complaint was completely inadequate and demonstrated that rather than addressing Frohman's conduct, its main focus was on protecting the university against Mosier, who Stony Brook improperly viewed as the problem, which included, by way of example:

> !     Taking six months to complete its investigation, even though the Title IX office initially told Mosier that the investigation would be just 60 days;

> !     Consistently avoiding Mosier when she called the Title IX office, so that she had no idea what was occurring with her complaint;

> !     Telling Mosier that Stony Brook came up with a "safety plan," although the "plan" was merely for Mosier to call 911;

> !     When Mosier protested that Stony Brook was not taking action to ensure her safety, the Title IX representative said it would conduct a meeting with Mosier, her parents, the Title IX office and University Police, and when the meeting finally occurred on August 29, 2017, just days before the fall semester was to begin, the University Police had no idea why they were there and Stony Brook's Title IX's representative only response was to say, **"We cannot guarantee your safety."**

The above are merely examples of the deliberate indifference that Stony Brook paid to Mosier's complaint that confirm that its actions were clearly unreasonable in light of the known circumstances.

24.     Mosier's college experience, which should have been a joyful and fulfilling period Mosier learning to become a teacher was instead turned into a nightmare, all because Frohman believed that it was his right as Mosier's professor to demean and belittle her because of her gender, which Stony Brook knew or should have know was occurring, given both the alarming openness of Frohman's actions and Gootenberg's statement that he could not "keep covering" for Frohman.

25.     Frohman's egregious sex discrimination of Mosier had a devastating impact on her emotional well being and confidence, and she suffered from depression and had difficulty sleeping, and her grades suffered as a result, demonstrating the pervasive and lasting impact on Mosier, and Mosier was required to seek counseling for the distress and anxiety she continued to suffer.

26.     For example, Mosier enjoyed a 3.3 GPA when she graduated from Nassau Community College, but had a 2.75 GPA at Stony Brook.

27.     Frohman's actions continued to impact Mosier throughout her enrollment at Stony Brook, as she repeatedly saw Frohman on campus, including in the student activity center and when she was required to see professors in the same building where Frohman maintained his office, causing Mosier to suffer panic attacks and anxiety that caused her to miss classes and avoid office time with other professors.

28.     Additionally, Mosier's GPA, which was lower than she believes it would have been had she not been the victim of Frohman's pervasive sex discrimination, prevented her from being

a student teacher in Spring 2018, which was a pre-requisite to Mosier completing the Program and becoming a teacher.

29.     When Mosier approached Stony Brook about a waiver to permit her to student teach nonetheless, Stony Brook told her that both Frohman and Professor Charles Backfish ("Backfish"), who was the Social Studies Education Program's graduate student advisor, would have to determine whether Mosier would receive a waiver, confirming that Stony Brook continued to permit Frohman to have control over her education.

30.     Mosier, looking for help, spoke with Interim Associate Dean of Students Ellen Driscoll ("Driscoll"), who told that Mosier that providing a waiver under the circumstances was an "easy fix" and that she would speak with the Associate Provost Richard Gatteau ("Gatteau").

31.     When Mosier stopped hearing from Driscoll, and with the deadline to apply for student teaching approaching, Mosier contacted Gatteau directly and had a meeting with him, where Gatteau told Mosier that he would not provide the waiver and pressured Mosier into leaving the teaching program and graduate with only a degree in History, which was devastating to Mosier, and when Mosier refused to withdraw from the Program, Gatteau became increasingly hostile towards her.

32.     Mosier also sought the assistance of Backfish, whose office was right next door to Frohman, but he would not meet with Mosier in a neutral setting to discuss her being able to student

teach, even though Stony Brook's Title IX Office had told Mosier that Backfish would be required to meet with her in a neutral location.

33.     Mosier wrote to Gatteau on or about September 28, 2017 with a copy to Stony Brook President Samuel L. Stanley, Jr., M..D., complaining about Frohman's conduct and Stony Brook's ineffective response, but she never heard back from either individual.

34.     Mosier continued seeking Gatteau's assistance to be able to student teach, but he told Mosier that he "doesn't have time for this" and would not discuss Mosier's concerns with her.

35.     Meanwhile, Frohman continued to teach at Stony Brook and was not impacted, while Mosier risked not completing the Program or graduating because she was not permitted to student teach.

36.     Additionally, Mosier's repeated efforts to get information about the status of the investigation into her complaint was met with resistance and secrecy.

37.     Mosier became so isolated, and felt so unsupported by Stony Brook, that she actually considered withdrawing from school and stopped attending classes on or about October 26, 2018, until Mosier ultimately learned from another institution she contacted that she could student teach through that school and still graduate with a Stony Brook degree.

38.     On or about October 30, 2017, Mosier received a letter from Stony Brook's Title IX office stating that the case was "closed" and that Mosier's allegations had been "substantiated," yet she was not given any further information.

39.     Mosier, during finals, met with Labor Relations on December 18, 2017 and after describing Frohman's sex discrimination of her, was told that Title IX had handled her complaint "all wrong" and that it should not have taken six weeks to complete the investigation, yet, thereafter, Labor Relations refused to have any further contact with Mosier.

40.     In addition to Frohman's lasting impact on Mosier and her well being, Stony Brook continued to permit Frohman to impact Mosier on an ongoing basis, as Mosier was told by a fellow student that on April 18, 2018, that when he attended a class with Backfish, whose office is right next to Frohman's office, he was met by a private investigator who knew him by name and stated that he was there – in Stony Brook's classroom – to address Mosier's complaint, saying, "I want you to know that [the allegations] are false and I am here to clear Professor Frohman's name."

41.     Mosier subsequently learned that Backfish had actually directed the other students who were not to meet with the investigator to a different classroom, so that the investigator would be able to corner the targeted students when they arrived at what they believed was a regularly scheduled class, so that Stony Brook was using its academic institution as a means to assist Frohman in defending against Mosier's allegations – even though Stony Brook had already substantiated Mosier's complaint.

42.     Stony Brook became such a hostile place that Mosier was afraid to even go to campus to pick up her cap and gown or to participate in commencement, including her fear that she might see Frohman again, as she had repeatedly since her complaint.

43.     Mosier overcame her fear and attended commencement and graduated from Stony Brook on or about May 18, 2018.

44.     As a result of Stony Brook's discriminatory conduct, Mosier has suffered the adverse effects of sex discrimination and the quality of her life, self-esteem and self-respect have been impacted, all of which will continue into the future and remain a source of humiliation, anguish and financial loss to Mosier.

## AS AND FOR A FIRST CAUSE OF ACTION ON BEHALF OF MOSIER <u>FOR SEX DISCRIMINATION IN VIOLATION OF  TITLE IX</u> (Against SUNY & Stony Brook Only)

45.     Mosier repeats, re-alleges and incorporates in full paragraphs 1 through 44 of this Complaint, as though fully set forth at length herein.

46.     Upon information and belief, Stony Brook has received and continues to receive federal financial assistance.

47.     Mosier was subjected to a pattern and practice of continuous, unwelcome, humiliating, and reprehensible sex discrimination that was permitted and condoned by Stony Brook,

14

the effect of which severely or pervasively altered the terms, conditions and privileges of Mosier's educational environment.

48.     Stony Brook had or should have had notice of the sex discrimination yet took no action to stop it and failed to adequately respond to or investigate Mosier's complaint, so that Stony Brook is liable for the discrimination that Mosier endured.

49.     As a proximate result of Stony Brook's conduct, which included facility of a private investigator to "clear" Frohman of his egregious sex discrimination of Mosier in the eyes of her peers, Mosier has been adversely affected in her education and in her normal life's pursuits, and Mosier believes that the injuries she incurred by being subjected to Stony Brook's conduct complained of herein has and will continue to have a devastating effect upon her and the quality of her life.

50.     Mosier was caused to suffer injuries resulting in emotional anguish and suffering, and has been humiliated, demeaned and otherwise intimidated and degraded because of Stony Brook's outrageous conduct in violation of Mosier's rights, all of which impacted her well-being and the quality of her life.

51.     The aforementioned acts of Stony Brook constitute unlawful discrimination on the basis of sex against Mosier in violation of Title IX of the Title IX of the Education Amendments of 1972, 20 U.S.C. §1681 *et seq.* ("Title IX"), which provides, *inter alia*, that:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance...

52.    As a direct and proximate result of Stony Brook's violation of Title IX, Stony Brook is liable to Mosier for money damages and, pursuant to 42 U.S.C. §1988, reasonable attorney's fees and costs.

53.    Mosier, therefore, seeks compensatory damages in this cause of action, including, among other things, for loss of earnings and loss of earning capacity and for the emotional harm inflicted upon her, in an award to be determined at a trial of this matter, as well as reasonable attorney's fees, the costs of this action and pre-judgment interest.

## AS AND FOR A SECOND CAUSE OF ACTION ON BEHALF OF MOSIER FOR DISCRIMINATION IN VIOLATION OF EXECUTIVE LAW §296(4)
### (Against All Defendants)

54.    Mosier repeats, re-alleges and incorporates in full paragraphs 1 through 44 of this Complaint, as though fully set forth at length herein.

55.    Mosier was subjected to a pattern and practice of continuous, unwelcome, humiliating, and reprehensible sex discrimination that was permitted by Stony Brook, the effect of which severely or pervasively altered the terms, conditions and privileges of Mosier's educational environment.

16

56.     Stony Brook had or should have had notice of the sex discrimination yet took no action to stop it and failed to adequately respond to or investigate Mosier's complaint, so that Stony Brook is liable for the discrimination that Mosier endured.

57.     As a proximate result of Stony Brook's conduct, Mosier has been adversely affected in her education and in her normal life's pursuits, and Mosier believes that the injuries she incurred by being subjected to Stony Brook's conduct complained of herein has and will continue to have a devastating effect upon her and the quality of her life.

58.     Mosier was caused to suffer injuries resulting in emotional anguish and suffering, and has been humiliated, demeaned and otherwise intimidated and degraded because of Stony Brook's outrageous conduct in violation of Mosier's rights, all of which impacted her well-being and the quality of her life.

59.     The aforementioned acts of Stony Brook constitute unlawful discrimination on the basis of sex against Mosier in violation of New York State Executive Law §296(4) ("the New York State Human Rights Law"), which provides, *inter alia*, that:

> It shall be an unlawful discriminatory practice for an education corporation or association which holds itself out to the public to be non-sectarian and exempt from taxation pursuant to the provisions of article four of the real property tax law to deny the use of its facilities to any person otherwise qualified, or to permit the harassment of any student or applicant, by reason of his...sex...

17

60.     As a direct and proximate result of Stony Brook's violation of the New York State

Human Rights Law §296(4), Mosier was adversely affected in her education and continues to suffer

in her life's normal pursuits, and she believes that the injuries inflicted upon her as a result of Stony

Brook's discriminatory conduct did and will continue to have a devastating effect upon the quality

of her life and will prevent her from functioning as she did prior to the conduct complained of herein,

all of which Mosier alleges to be in the amount of Three Million Dollars ($3,000,000), as well as

reasonable attorney's fees pursuant to §297(10), and pre-judgment interest and costs.


**AS AND FOR A THIRD CAUSE OF ACTION ON
BEHALF OF MOSIER AGAINST STONY BROOK
FOR SEX DISCRIMINATION IN VIOLATION
OF THE NEW YORK CIVIL RIGHTS LAW §40-c
(Against All Defendants)**

61.     Mosier repeats, re-alleges and incorporates in full paragraphs 1 through 44 of this

Complaint, as though fully set forth at length herein.


62.     Mosier was subjected to a pattern and practice of continuous, unwelcome,

humiliating, and reprehensible sex discrimination that was permitted by Stony Brook, the effect of

which severely or pervasively altered the terms, conditions and privileges of Mosier's educational

environment.


63.     Stony Brook had or should have had notice of the sex discrimination yet took no

action to stop it and failed to adequately respond to or investigate Mosier's complaint, so that Stony

Brook is liable for the discrimination that Mosier endured.

18

64.     As a proximate result of Stony Brook's conduct, Mosier has been adversely affected in her education and in her normal life's pursuits, and Mosier believes that the injuries she incurred by being subjected to Stony Brook's conduct complained of herein has and will continue to have a devastating effect upon her and the quality of her life.

65.     Mosier was caused to suffer injuries resulting in emotional anguish and suffering, and has been humiliated, demeaned and otherwise intimidated and degraded because of Stony Brook's outrageous conduct in violation of Mosier's rights, all of which impacted her well-being and the quality of her life.

66.     The aforementioned acts of Stony Brook constitute unlawful discrimination on the basis of sex against Mosier in violation of the New York State Civil Rights Law §40-c(2), which provides, *inter alia*, that:

> No person shall, because of...sex...be subjected to any discrimination in his or her civil rights, or to any harassment...in the exercise thereof, by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision of the state.

67.     As a direct and proximate result of Stony Brook's violation of the New York Civil Rights Law §40-c, Mosier is entitled to compensatory damages that include emotional distress, loss of educational opportunities, economic injuries and other direct and consequential damages in an amount to be determined at trial.

**WHEREFORE**, Mosier demands judgment against Stony Brook on the First Cause of Action in an award to be determined at a trial of this matter; on the Second Cause of Action the sum of Three Million Dollars ($3,000,000) in compensatory damages, plus attorney's fees, pre-judgment interest and the costs of this action as is permitted under the law; on the Third Cause of Action in an award to be determined at a trial of this matter; plus, on all causes of action, attorney's fees, pre-judgment interest and the costs of this action as is permitted under the law; and for such other and further relief that the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

**SCHWARTZ PERRY & HELLER, LLP**
*Attorneys for Plaintiff*

By: ___/s Brian Heller_____
    BRIAN HELLER (4004)
    DAVIDA S. PERRY (1879)
    3 Park Avenue, 27th Floor
    New York, New York 10016
    (212) 889-6565

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ERIN MOSIER,

                *Plaintiff,*

      -against-

THE STATE UNIVERSITY OF NEW YORK,
STONY BROOK UNIVERSITY and
LAWRENCE FROHMAN, PH.D., *individually*,

                *Defendants.*
-----------------------------------------------------------------X

**<u>VERIFICATION</u>**

STATE OF NEW YORK    )
                      )ss.
COUNTY OF NEW YORK  )

      ERIN MOSIER, being duly sworn, says:

      I am the Plaintiff in the within action; I have read the foregoing Complaint and know the

contents thereof; the same is true to my knowledge, except as to the matters therein stated to be

alleged on information and belief, and as to those matters, I believe them to be true.


                                 _____
                                 ERIN MOSIER

Sworn to me this 8th
day of August 2018
_____
NOTARY PUBLIC